1   PETER D. KEISLER
    Assistant Attorney General
2   CARL J. NICHOLS
    Deputy Assistant Attorney General
3   JOSEPH H. HUNT
    Director, Federal Programs Branch
4   ANTHONY J. COPPOLINO
    Special Litigation Counsel
5   RENÉE S. ORLEANS
    ANDREW H. TANNENBAUM
6   ALEXANDER K. HAAS
    renee.orleans@usdoj.gov
7   andrew.tannebaum@usdoj.gov
    alexander.haas@usdoj.gov
8   Trial Attorneys
    U.S. Department of Justice
9   Civil Division, Federal Programs Branch
    20 Massachusetts Avenue, NW
10  Washington, D.C. 20001
    Phone: (202) 514-4504/(202) 514-4782/(202) 307-3937
11  Fax:    (202) 616-8470/(202) 616-8202
    *Attorneys for the United States of America*

12

13                      **UNITED STATES DISTRICT COURT**
                     **NORTHERN DISTRICT OF CALIFORNIA**

14  _____
                                          )
15  DENNIS P. RIORDAN, *et al.*           )  C-06-3574-VRW
                                          )
16          Plaintiffs,                   )  **STATEMENT OF INTEREST OF**
                                          )  **THE UNITED STATES IN**
17          v.                            )  **OPPOSITION TO PLAINTIFFS'**
                                          )  **MOTION TO REMAND**
18  VERIZON COMMUNICATIONS INC.           )
                                          )
19          Defendant.                    )
                                          )  Date:   August 24, 2006
20                                        )  Time:   2:00 p.m.
                                          )  Courtroom: 6
21  _____      )
                                          )  Judge Vaughn R. Walker

22

23

24

25

26

27

28

1

2

# TABLE OF CONTENTS

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

DISCUSSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

I.   INTERVENTION BY THE UNITED STATES RENDERS THIS ACTION
     SEPARATELY REMOVABLE PURSUANT TO SECTION 1442, AND REMAND
     WOULD THEREFORE BE FUTILE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

II.  BECAUSE THIS IS A QUINTESSENTIALLY FEDERAL CASE,
     PLAINTIFFS' REMAND MOTION MUST BE DENIED . . . . . . . . . . . . . . . . . . . . . . . 5

     A.   Plaintiffs' Claims Necessarily Arise Under Federal Law Because
          This Action Depends on Substantial Questions of Federal Law . . . . . . . . . . . . . 5

          1.   The United States Constitution Precludes a State Court From Granting
               Plaintiffs' Requested Relief . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

          2.   Adjudication of Plaintiffs' State Law Causes of Action Necessarily
               Requires the Resolution of Substantial Questions of Federal Law . . . . . . 8

               a.   State Secrets Privilege and the Totten Bar  . . . . . . . . . . . . . . . . . . 8

               b.   Statutory Claims . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

     B.   Plaintiffs' Claims are Completely Preempted By A Comprehensive
          Body of Federal Statutory and Common Law Regarding Alleged
          Foreign Intelligence Surveillance  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

1

## <u>TABLE OF AUTHORITIES</u>

2

### CASES

3

*ARCO Environmental Remediation, L.L.C. v. Dep't of Health and Envnt'l Quality*,
    213 F.3d 1108 (9th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

4

*American Insurance Ass'n v. Garamendi*,
    539 U.S. 396 (2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

5

6

*Bell v. City of Kellogg*,
    922 F.2d 1418 (9th Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

7

*Central Intelligence Agency v. Sims*,
    471 U.S. 159 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

8

9

*Chicago & Southern Air Lines, Inc. v. Waterman S.S. Corp.*,
    333 U.S. 103 (1948) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

10

*City of Chicago v. International Coll. of Surgeons*,
    522 U.S. 156 (1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

11

12

*Crosby v. National Foreign Trade Council*,
    530 U.S. 363 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

13

*Ellsberg v. Mitchell*,
    709 F.2d 51 (D.C. Cir. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

14

15

*Empire Healthchoice Assurance, Inc. v. McVeigh*,
    126 S. Ct. 2121 (2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

16

*Fitzgerald v. Penthouse Int'l, Ltd.*,
    776 F.2d 1236 (4th Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

17

18

*Fitzgibbon v. CIA*,
    911 F.2d 755 (D.C. Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

19

*Franchise Tax Bd. v. Construction Laborers Vacation Trust*,
    463 U.S. 1 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

20

21

*Goodyear Atomic Corp. v. Miller*,
    486 U.S. 174 (1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

22

*Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*,
    545 U.S. 308, 125 S. Ct. 2363 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

23

24

*Halkin v. Helms*,
    690 F.2d 977 (D.C. Cir. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

25

*Hancock v. Train*,
    426 U.S. 167 (1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

26

27

*Hayden v. Nat'l Security Agency*,
    608 F.2d 1381 (D.C. Cir. 1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

28

*Hepting v. AT&T Corp.*,
___ F. Supp. 2d ___ No. 06-cv-00672-VRW (N.D. Cal.) . . . . . . . . . . . . . . . . . . . . passim

*James Stewart & Co. v. Sadrakula*,
309 U.S. 94 (1940) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Jones v. R.R. Donnelley & Sons Co.*,
541 U.S. 369 (2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Kasza v. Browner*,
133 F.3d 1159 (9th Cir.), *cert. denied*, 525 U.S. 967 (1998) . . . . . . . . . . . . . . . . . . . 8, 9

*Leonel v. American Airlines, Inc.*,
400 F.3d 702 (9th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Leslie Miller, Inc. v. Arkansas*,
352 U.S. 187 (1956) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Linder v. Nat'l Security Agency*,
94 F.3d 693 (D.C. Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*McCulloch v. Maryland*,
17 U.S. (4 Wheat.) 316 (1819) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7, 14

*Merrell Dow Pharms., Inc. v. Thompson*,
478 U.S. 804 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*In re Miles*,
430 F.3d 1083 (9th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 14

*Murphy v. Waterfront Comm'n of New York Harbor*,
378 U.S. 52 (1964) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*New SD, Inc. v. Rockwell Int'l Corp.*,
79 F.3d 953 (9th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Northrop Corp. v. McDonnell Douglas Corp.*,
751 F.2d 395 (D.C. Cir.1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Oneida Indian Nation v. County of Oneida*,
414 U.S. 661 (1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 17

*Porter v. Rathe*,
No. 98-331-FR, 1998 WL 355499 (D. Or. June 18, 1998) . . . . . . . . . . . . . . . . . . . . . . 4

*Sale v. Haitian Centers Council*,
509 U.S. 155 (1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*see also Metropolitan Life Ins. Co. v. Taylor*,
481 U.S. 58 (1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Smith v. Kansas City Title & Trust Co.*,
255 U.S. 180 (1921) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Snepp v. United States*,
    444 U.S. 507 (1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  16

*Tenet v. Doe*,
    544 U.S. 1 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  9, 10

*Terkel v. AT&T Corp.*,
    No. 06C2837, 2006 WL 2088202 (N.D. Ill. July 25, 2006)  . . . . . . . . . . . . . . . . . . passim

*The Founding Church of Scientology of Washington, D.C., Inc. v. Nat'l Security Agency*,
    610 F.2d 824 (D.C. Cir. 1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  15

*In re the Marriage of Dean Dyche and Theresa Beat*,
    No. 05-1116-WEB, 2005 WL 1993457 (D. Kan. Aug. 16, 2005) . . . . . . . . . . . . . . . . .  4

*Totten v. United States*,
    92 U.S. 105 (1876) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  9, 10

*United States v. Burr*,
    25 F. Cas. 30 (C.C.D. Va. 1807) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  9

*United States v. Curtiss-Wright Export Corp.*,
    299 U.S. 304  (1936) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  6, 14

*United States v. Koreh*,
    144 F.R.D. 218 (D.N.J. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  9, 16

*United States v. Marchetti*,
    466 F.2d 1309 (4th Cir. 1972) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  7, 14

*United States v. Nixon*,
    418 U.S. 683 (1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  8

*United States v. Pink*,
    315 U.S. 203 (1942) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  17

*United States v. Reynolds*,
    345 U.S. 1 (1953) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  8, 9

*United States v. Todd*,
    245 F.3d 691 (8th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  4

*Wayte v. United States*,
    470 U.S. 598 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  14

*Weinberger v. Catholic Action of Haw./Peace Ed. Project*,
    454 U.S. 139 (1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  9

*Willingham v. Morgan*,
    395 U.S. 402 (1969) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  4

**STATUTES**

Cal. Pub. Util. Code § 2891(d)(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   11

National Security Agency Act of 1959, Pub. L. No. 86-36, § 6, 73 Stat. 63, 64 . . . . . . . . . . .   15

Section 102A(i)(1) of the Intelligence Reform and Terrorism Prevention Act of
    2004, Pub. L. No. 108-458, 118 Stat. 3638 (Dec. 17, 2004) . . . . . . . . . . . . . . . . . . . . .   15

18 U.S.C. §§ 2511(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   11

28 U.S.C. § 517 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    1

28 U.S.C. § 1331 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    5

28 U.S.C. § 1407 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    2

28 U.S.C. § 1442(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   1, 3

28 U.S.C. § 1447 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    4

50 U.S.C. § 402 note . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   15

50 U.S.C. § 403(d)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   16

50 U.S.C. § 403-1(i)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   15

50 U.S.C. § 1805(i) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   11

U.S. Const., art. II, § 2 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    7

## STATEMENT OF INTEREST OF THE UNITED STATES

## INTRODUCTION

The United States of America, through its undersigned counsel, hereby submits this Statement of Interest in opposition to Plaintiffs' motion to remand this case to California Superior Court ("Remand Motion").[1]  This is the paradigmatic example of a case that, although artfully pleaded in an attempt to avoid federal courts, is so infused with questions of federal law that it must be litigated in federal court.   Plaintiffs' Complaint focuses squarely and exclusively on the alleged foreign intelligence activities of the United States and the alleged participation in those activities by Defendant Verizon Communications ("Verizon"), and seeks to enjoin Verizon's alleged participation in these activities.  But the United States Constitution vests exclusively to the federal government — to the exclusion of the States — matters related to foreign affairs, the common defense of the nation, and, in particular, foreign intelligence activities.  Moreover, Congress has enacted comprehensive and detailed federal statutes governing this conduct that completely preempt any state law that might arguably apply.  As a result, the Constitution simply does not permit a state court to entertain the claims presented by Plaintiffs' Complaint.

The Court need not reach these issues, however, because there is an independent and dispositive basis for denying the Remand Motion.  The United States is moving contemporaneously to intervene in this action as a defendant, and, as a defendant, has an absolute right to remove this action. *See* 28 U.S.C. § 1442(a).

Counsel for the United States will attend the August 24, 2006 hearing on these motions should the Court wish to address the United States' position.

---

[1]  The "Solicitor General, or any officer of the Department of Justice, may be sent by the Attorney General to any State or district in the United States to attend to the interests of the United States in a suit pending in a court of the United States, or in a court of a State, or to attend to any other interest of the United States." 28 U.S.C. § 517.

Statement of Interest of the United States in Support of Defendants' Motion to Stay & in Opposition to Plaintiffs' Motion to Remand, No. C-06-3574 (VRW)

**BACKGROUND**

On May 26, 2006, Plaintiffs, subscribers of various communications services of Verizon, filed this action in California Superior Court alleging that Verizon participates in a government program in which Verizon allegedly provides certain telephone records to the National Security Agency ("NSA") in violation of Article I of the California Constitution and section 2891 of the Public Utilities Code. Compl. ¶¶ 1-39. Plaintiffs seek an order that, *inter alia,* enjoins Verizon from "providing any customer calling records to the NSA" and orders Verizon "to disclose to each customer what files or records of that customer have been shared with any third party, including the dates and recipients of any such disclosure." Compl., Prayer for Relief. Plaintiffs' claims thus seek to put at issue alleged foreign intelligence surveillance activities undertaken by the United States Government.

On May 24, 2006, two days prior to the filing of this action, Verizon submitted to the Judicial Panel on Multidistrict Litigation ("JPML") a motion for transfer and coordination pursuant to 28 U.S.C. § 1407. That motion requests that the JPML: (1) transfer 20 virtually identical purported class actions (pending before 14 different federal district courts) to a single district court; and (2) coordinate those actions for pretrial proceedings pursuant to 28 U.S.C. § 1407. Because this case was filed after Verizon's motion for transfer and coordination, it was not subject to the original motion, but was later designated as a potential tag along action. The number of cases raising similar issues continues to increase and now totals well over 30 actions. A hearing on the motion for transfer and coordination before the JPML was held on July 27, 2006; that motion is pending.

On June 5, 2006, Verizon filed a notice of removal in this action, and, on June 15, 2006, moved to stay this action in light of the pending JPML proceedings. Plaintiffs moved to remand the case on July 5, 2006. A hearing on these motions is set for August 24, 2006.

Since this action was filed, two decisions were issued in related cases — *Hepting v. AT&T Corp.*, No. 06-cv-00672-VRW (N.D. Cal.), and *Terkel v. AT&T Corp.,* No. 06-cv-02837 (N.D.Ill.). These cases raise allegations involving foreign intelligence surveillance activities

1  similar to those raised by Plaintiffs here.  Both cases were brought against only AT&T; in both

2  cases, the Courts granted the United States' motions to intervene.  In *Hepting*, this Court denied

3  the United States' motion to dismiss but stayed all discovery on the "call records" claims

4  identical to those presented here.  *See Hepting v. AT&T Corp.*, ___ F. Supp. 2d ___, No. C-06-

5  672 (VRW), 2006 WL 2038464 (N.D. Cal. July 20, 2006).  In *Terkel*, in contrast, the court

6  granted the United States' motion to dismiss on state secrets grounds.  *See Terkel v. AT&T Corp.*,

7  No. 06C2837, 2006 WL 2088202 (N.D. Ill. July 25, 2006).  Having been "persuaded that

8  requiring AT&T to confirm or deny whether it has disclosed large quantities of telephone records

9  to the federal government could give adversaries of this country valuable insight into the

10  government's intelligence activities," the court held that "such disclosures are barred by the state

11  secrets privilege." *Id.* *17.  The court added that, at the very least, it was satisfied, after carefully

12  reviewing the government's public submission, that "requiring AT&T to admit or deny the core

13  allegations necessary for the plaintiffs to prove standing—whether *their* information is being

14  disclosed—implicates matters whose public discussion, be it an admission or a denial, could

15  impair national security." *Id.* *19.  Accordingly, because the plaintiffs' claims of injury could

16  not be evaluated on their particular facts, the court found that their contentions were simply a

17  request for an advisory opinion that could not be entertained.  *Id.* *21.

18  **DISCUSSION**

19  **I.    INTERVENTION BY THE UNITED STATES RENDERS THIS ACTION
20          SEPARATELY REMOVABLE PURSUANT TO SECTION 1442, AND REMAND
         WOULD THEREFORE BE FUTILE**

21          As set forth below, the Remand Motion must be denied because this is a quintessentially

22  federal case that must be litigated in federal court.  However, the Court need not reach that issue

23  because the United States has moved to intervene in this matter pursuant to Federal Rule of Civil

24  Procedure 24.

25          The United States' intervention as a party-defendant provides the government with a

26  separate and independent right to remove this action under 28 U.S.C. § 1442(a).  The United

27  States' right to remove "is made absolute whenever a suit in a state court is for any act 'under

28

1    color' of federal office, regardless of whether the suit could originally have been brought in a

2    federal court." *Willingham v. Morgan*, 395 U.S. 402, 406 (1969).  Furthermore, it is irrelevant

3    whether Plaintiffs' "original case had a non-federal cast." *United States v. Todd*, 245 F.3d 691,

4    693 (8th Cir. 2001).  In *Todd*, for example, the Eighth Circuit held that removal was proper

5    where the only basis for removal was the United States' intervention.  245 F.3d at 693 (rejecting

6    plaintiffs' contention that such removal was improper)*.  See also In re the Marriage of Dean*

7    *Dyche and Theresa Beat*,  No. 05-1116-WEB, 2005 WL 1993457, *3 (D. Kan. Aug. 16, 2005)

8    (removal is proper, and the requirements of section 1442 are met, when the United States

9    intervenes); *Porter v. Rathe*, No. 98-331-FR, 1998 WL 355499, *2 (D. Or. June 18, 1998)

10   (intervention of the United States in state court "provides grounds for removal to this Court.").

11        Even if the Court were to conclude that the United States must intervene <u>in state court</u> to

12   trigger Section 1442, it would be futile to remand the case.  In *Bell v. City of Kellogg*, 922 F.2d

13   1418, 1424-25 (9th Cir. 1991), the Ninth Circuit adopted a futility exception to the remand

14   provisions of 28 U.S.C. § 1447.  After the district court held that plaintiffs lacked standing to

15   challenge the federal aspects of the case, the district court dismissed the entire case, rather than

16   remand certain pendant state claims.  The Ninth Circuit approved this procedure — rather than

17   one that would have required remand even if a remand would been futile — because of the

18   clearly inefficient use of judicial resources the contrary rule would entail.  The Court of Appeals

19   thus held that "[w]here the remand to state court would be futile, . . . the desire to have state

20   courts resolve state law issues is lacking" and such remands would be inappropriate because "no

21   comity concerns are involved."  *Bell*, 922 F.2d at 1424-25 (citing *M.A.I.N. v. Commissioner,*

22   *Maine Dep't. of Human Servs.*, 876 F.2d 1051, 1054 (1st Cir. 1989)).

23        Here, a remand would be futile:  the United States' intervention provides a separate and

24   automatic vehicle to remove this action, and a remand would thus serve only as a delay and a

25   waste of resources for the parties and the federal and state courts.

26

27

28

1    **II.    BECAUSE THIS IS A QUINTESSENTIALLY FEDERAL CASE,**
2    **PLAINTIFFS' REMAND MOTION MUST BE DENIED**

3        Because this a quintessentially federal case, the Remand Motion must be denied for at

4    least two additional and district reasons: (1) Plaintiffs' claims necessarily arise under federal law

5    because they require the resolution of substantial issues of federal law; and (2) Plaintiffs' claims

6    are preempted by federal law.

7        **A.    Plaintiffs' Claims Necessarily Arise Under Federal Law Because**
     **This Action Depends on Substantial Questions of Federal Law**

8        Under long-familiar principles, a case "arises under federal law" within the meaning of 28

9    U.S.C. § 1331 if "the plaintiff's right to relief necessarily depends on resolution of a substantial

10   question of federal law." *Franchise Tax Bd. v. Construction Laborers Vacation Trust*, 463 U.S.

11   1, 27-28 (1983).  Most recently in *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545

12   U.S. 308, 125 S. Ct. 2363, 1267 (2005), the Supreme Court held that "federal question

13   jurisdiction will lie over state-law claims that implicate significant federal issues."  *See also*

14   *Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369, 376 (2004) ("a claim arises under federal law

15   if federal law provides a necessary element of the plaintiff's claim for relief").  In *Grable*, the

16   Court explained that where "a state-law claim necessarily raise[s] a stated federal issue, actually

17   disputed and substantial, which a federal forum may entertain without disturbing any

18   congressionally approved balance of federal and state judicial responsibilities," then federal

19   jurisdiction is warranted.  125 S.Ct. at 2368.  *See also City of Chicago v. International Coll. of*

20   *Surgeons*, 522 U.S. 156 (1997); *Merrell Dow Pharms., Inc. v. Thompson*, 478 U.S. 804, 808-09

21   (1986); *Smith v. Kansas City Title & Trust Co.*, 255 U.S. 180 (1921).

22       Here, Plaintiffs' Complaint focuses solely on Verizon's alleged participation in a foreign

23   intelligence surveillance program allegedly conducted by the United States.  *See, e.g.,* Compl.

24   ¶¶ 1, 14-22 .  Plaintiffs ask an organ of state government to enjoin those activities.  But it is plain

25   that, under the U.S. Constitution, the federal government has plenary authority over these issues,

26   and the states have no ability to intrude or interfere with these federal functions.  Even if the

27   states had some role to play, as provided in *Grable*, the federal issues presented in the Complaint

28

1  are so substantial as to warrant their adjudication in a federal forum.

2  **1.    The United States Constitution Precludes a State Court From
3         Granting Plaintiffs' Requested Relief**

4       Plaintiffs' Complaint, relying exclusively on a purported state law cause of action, asks a

5  state court to apply state law to effectively enjoin a purported foreign intelligence gathering

6  function and order disclosure of highly classified information.  *See* Compl., Prayer for Relief.

7  Indeed, that is the first line of Plaintiffs' memorandum of points and authorities supporting their

8  motion to remand.  *See* Plaintiffs' Memorandum in Support of the Motion to Remand at 2 ("Plts.

9  Mem.").  But the states have no such power under the U.S. Constitution, and for this reason alone

10 this action must be in federal court.

11      It has been clear since at least *McCulloch v. Maryland*, 17 U.S. (4 Wheat.) 316 (1819),

12 that no state law and no organ of state government may regulate the federal government or

13 obstruct federal operations.  As the Supreme Court indicated in *McCulloch*, "[t]he States have no

14 power . . . to retard, impede, burden, or in any manner control, the operations of the

15 constitutional laws enacted by congress to carry into execution the power vested in the general

16 government." *McCulloch*, 17 U.S. at 326-27.  Foreign intelligence gathering is precisely this sort

17 of exclusively federal function in which the states have no role whatsoever.  In light of the

18 exclusively federal character of these functions, Plaintiffs' purported state law cause of action

19 must arise under federal law for purposes of removal.  Indeed, foreign intelligence gathering

20 concerns three overlapping areas that are peculiarly the province of the National Government.

21      First, foreign intelligence activities necessarily touch upon foreign relations and the

22 conduct of the Nation's foreign affairs by the federal government, and "[t]here is, of course, no

23 question that at some point an exercise of state power that touches upon foreign relations must

24 yield to the National Government's policy, given the 'concern for uniformity in this country's

25 dealings with foreign nations' that animated the Constitution's allocation of the foreign relations

26 power to the National Government in the first place." *American Insurance Ass'n v. Garamendi*,

27 539 U.S. 396, 413 (2003) (quotation omitted).  *See also Crosby v. National Foreign Trade

28 Council*, 530 U.S. 363, 381 (2000); *United States v. Curtiss-Wright Export Corp.*, 299 U.S. 304

1    (1936).

2    Second, foreign intelligence gathering relates to the conduct of military affairs, and the

3    President has "unique responsibility" for the conduct of "foreign and military affairs," *Sale v.*

4    *Haitian Centers Council*, 509 U.S. 155, 188 (1993). "The President . . . possesses in his own

5    right certain powers conferred by the Constitution on him as Commander-in-Chief and as the

6    Nation's organ in foreign affairs." *Chicago & Southern Air Lines, Inc. v. Waterman S.S. Corp.*,

7    333 U.S. 103, 109 (1948). The "[g]athering intelligence information" is well within the

8    President's constitutional responsibility for the security of the Nation as the Chief Executive and

9    as Commander in Chief of our Armed forces. *United States v. Marchetti*, 466 F.2d 1309, 1315

10   (4th Cir. 1972) (citing U.S. Const., art. II, § 2) (affirming an injunction to prevent the release of

11   classified information in a publication). Moreover, these foreign and military affairs functions,

12   vested exclusively through the U.S. Constitution in the federal government, must proceed

13   unfettered from interference by any organ of state government.

14   In seeking to apply a cause of action under California law, Plaintiffs attempt to use state

15   law as a basis to exert regulatory authority with respect to the nation's foreign intelligence

16   gathering. As a result, this use of state regulatory authority intrudes upon a field that is reserved

17   exclusively to the federal government and in a manner that interferes with federal prerogatives.

18   By virtue of the Supremacy Clause, "the activities of the Federal Government are free from

19   regulation by any state" except where Congress expressly provides to the contrary. *Hancock v.*

20   *Train*, 426 U.S. 167, 178-79 (1976); *Goodyear Atomic Corp. v. Miller*, 486 U.S. 174, 180

21   (1988). Given the powerlessness of state law vis-a-vis conflicting federal law, "[w]here

22   enforcement of . . . state law would handicap efforts to carry out the plans of the United States,

23   the state enactment must  . . . give way." *James Stewart & Co. v. Sadrakula*, 309 U.S. 94, 103-

24   04 (1940). Here, Plaintiffs seek to not only intrude on federal operations, but to also employ

25   state law and the state courts to impede and burden those operations as well. That is not

26   constitutionally permissible. Irrespective of the meaning of California law, neither California

27   statutes nor its Constitution may intrude on such inherently federal operations. *See McCulloch*,

28

1  17 U.S. at 326-27; *see also Leslie Miller, Inc. v. Arkansas*, 352 U.S. 187, 189-90 (1956).

2      In sum, under *Grable*, recognizing federal jurisdiction in this case would not "distrub[]

3  any congressionally approved balance of federal and state judicial responsibilities," *Grable*, 125

4  S.Ct. at 2368, because there are no state responsibilities, judicial or otherwise, when it comes to

5  matters pertaining to alleged foreign intelligence gathering.  Moreover, notwithstanding

6  Plaintiffs' pleading of state law, it is apparent that substantial questions of federal law

7  predominate this case.  A federal forum must therefore exist under *Grable* for the adjudication of

8  this case.

9                    **2.      Adjudication of Plaintiffs' State Law Causes of Action Necessarily
                              Requires the Resolution of Substantial Questions of Federal Law**

10      Plaintiffs' state law causes of action also necessarily raise substantial and actually

11  disputed issues of federal law that go to the heart of this action.  This case is therefore nothing

12  like a routine state tort action where federal law plays an ancillary role in the action, so that state

13  courts are entirely competent to consider the matter.  *See Empire Healthchoice Assurance, Inc. v.*

14  *McVeigh*, 126 S. Ct. 2121 (2006).  Here, issues of federal common law and federal statutory law

15  predominate this action and must necessarily be resolved for the case to proceed.  In addition,

16  and significantly, neither the state courts, nor state law in general, have any ability to provide

17  Plaintiffs with the relief they request.  The only forum where this action is cognizable, if at all,

18  would be in a federal forum, and Plaintiffs' pleading of purported state law claims cannot keep

19  this Court from retaining jurisdiction to decide substantial federal issues intrinsically intertwined

20  in this action.

21                          a.      State Secrets Privilege and the *Totten* Bar

22      At the outset, any resolution of Plaintiffs' claims entirely depends on two bodies of

23  federal common law that require dismissal or otherwise render this suit nonjusticiable.  Initially,

24  a substantial body of long-standing federal common law recognizes a privilege for the protection

25  of state secrets that likewise is based on the President's Article II powers to conduct foreign

26  affairs and provide for the national defense.  *See United States v. Nixon*, 418 U.S. 683, 710

27  (1974); *United States v. Reynolds*, 345 U.S. 1 (1953); *Kasza v. Browner*, 133 F.3d 1159 (9th

28

Cir.), *cert. denied*, 525 U.S. 967 (1998); *Fitzgerald v. Penthouse Int'l, Ltd.,* 776 F.2d 1236 (4th Cir. 1985). Recognized from the earliest days of the Republic, *see United States v. Burr*, 25 F. Cas. 30 (C.C.D. Va. 1807), the state secrets privilege encompasses a range of matters, including information that would result in "impairment of the nation's defense capabilities, disclosure of intelligence-gathering methods or capabilities, and disruption of diplomatic relations with foreign Governments." *Ellsberg v. Mitchell*, 709 F.2d 51, 57 (D.C. Cir. 1983), *cert. denied sub nom*. *Russo v. Mitchell*, 465 U.S. 1038 (1984) (footnotes omitted); *see also Halkin v. Helms*, 690 F.2d 977, 990 (D.C. Cir. 1982) (state secrets privilege protects intelligence sources and methods involved in NSA surveillance). Moreover, the privilege is absolute and may not be pierced by any demonstration of need, no matter how compelling. *Northrop Corp. v. McDonnell Douglas Corp*., 751 F.2d 395, 399 (D.C. Cir.1984); *see also Kasza*, 133 F.3d at 1166. Where "there is a reasonable danger that compulsion of the evidence will expose military matters which, in the interest of national security, should not be divulged," the information at issue should not be disclosed. *Reynolds*, 345 U.S. at 10; *Koreh*, 144 F.R.D. at 221.

Whether federal common law — the state secrets privilege — requires the dismissal of this action is itself a substantial question of *federal* law that will be actually disputed. And where the state secrets at issue go to the heart of the action, a federal forum must be available to protect the federal sovereign's unique interests relating to national security. Finally, in light of the United States' intervention in this action and intention to assert the state secrets privilege, Plaintiffs' contention that the United States is not present to assert these governmental interests, *see* Plts. Mem. at 20-21, is now moot.

A related, but distinct body of federal common law authority, announced more than a century ago in *Totten v. United States*, 92 U.S. 105 (1876), also categorically prohibits suits related to alleged covert espionage agreements. *See Tenet v. Doe*, 544 U.S. 1, 3 (2005); *Weinberger v. Catholic Action of Haw./Peace Ed. Project*, 454 U.S. 139, 146-147 (1981) (citing *Totten* in holding that whether or not the Navy has complied with the National Environmental Policy Act to the fullest extent possible is beyond judicial scrutiny, where, due to national

1    security reasons, the Navy could "neither admit nor deny" the fact that was central to the suit –

2    that it proposed to store nuclear weapons at a facility).  When invoked, the suit is rendered

3    nonjusticiable.  As the Supreme Court explained, "public policy forbids the maintenance of *any*

4    *suit* in a court of justice which would inevitably lead to the disclosure of matters which the law

5    itself regards as confidential."  *Tenet v. Doe*, 544 U.S. at 8 (quoting *Totten*, 92 U.S. at 107)

6    (emphasis in original).  Indeed, the *Totten*/*Tenet* inquiry should be resolved at the earliest stages

7    of the litigation and even before the Court resolves jurisdictional issues.  As the Supreme Court

8    recently noted, the federal common law is "designed not merely to defeat the asserted claims, but

9    to preclude judicial inquiry" at all.  *Tenet v. Doe*, 544 U.S. at 6 n.4.

10        Based on *Totten* and *Tenet*, it is a matter of federal common law that suits seeking to

11   disclose the very existence of a secret relationship between the government and private parties

12   are nonjusticiable.  Here, Plaintiffs themselves assert in the Complaint that the relationship

13   between Verizon and the United States is precisely that, *i.e.*, after September 11, 2001, Verizon

14   allegedly entered into an espionage agreement to provide the NSA with certain call records.  *See*

15   Compl. ¶ 14.  Clearly, under *Grable*, a substantial issue of *federal* common law exists insofar as

16   Plaintiffs' claims would not justiciable under this body of law.

17        Both the state secrets privilege and *Totten/Tenet* doctrine underscore that substantial

18   questions of federal law exist in this case such that this action must be deemed as arising under

19   federal law.  Indeed, because federal common law requires dismissal or otherwise renders this

20   action nonjusticiable, this is not a situation where a mere federal defense exists — such as

21   ordinary preemption of state law — but an action may still be adjudicated in the state court.

22   Rather, where there is an alleged federal espionage agreement, and state secrets go to the heart of

23   the case, then, by definition, a situation exists where substantial and disputed questions of federal

24   law predominate the action and require a federal court to take jurisdiction over the matter to

25   ensure that the federal interests in this action are vindicated.[2]  This is particularly so because state

26   _____

27        [2] Thus, for example, in *Terkel*, discussed above, the federal court granted the United
     States' motion to dismiss on state secret grounds in a case that raised "call records" claims

28

1    law in the area of federal intelligence gathering is necessarily displaced.  Taken together, these

2    federal statutory inquiries and the federal common law justiciability issues clearly meet, as the

3    Supreme Court described, the relevant inquiry of whether a state law claim "implicate[s]

4    significant federal issues" or "raise[s] a stated federal issue, actually disputed and substantial."

5    *Grable*, 125 S. Ct. at 2368.

6                          b.    Statutory Claims

7            Moreover, Plaintiffs' statutory causes of action also necessarily raise issues of federal law

8    in order for their resolution.  First, Plaintiffs' statutory cause of action under California Public

9    Utilities Code § 2891 depends on the resolution of federal law.  Notably, section 2891 provides

10   that no cause of action exists where "[i]nformation [is] provided to a law enforcement agency in

11   response to lawful process."  Cal. Pub. Util. Code § 2891(d)(6).  This is core of Plaintiffs'

12   allegations because they have asserted that Verizon provided records to the NSA without "legal

13   process from the government."  Compl. ¶ 8.  Here, resolving Plaintiffs' section 2891 claim would

14   therefore depend entirely on whether any subpoenas, orders, certifications, or other legal process

15   issued by the federal government properly authorized Verizon to provide the information under

16   federal law.  Federal statutes such as the Foreign Intelligence Surveillance Act, Title III, and the

17   Stored Communications Act, and other federal law address this issue and contain numerous

18   authorization and immunity provisions that may be at issue here.  *See, e.g.*, 18 U.S.C. §§

19   2511(2)(a), 2520(d), 2702(b)(2), 2707(e); 50 U.S.C. § 1805(i).

20           Thus, the section 2891 claim is properly removed for reasons identical to *Grable*.  In

21   *Grable*, the reason that the action arose under federal law and raised substantial issues of federal

22   law was that the quiet-title suit turned on the adequacy of an IRS notice of sale under federal law.

23   125 S. Ct. at 2368.  The same is true here.  Because Plaintiffs' section 2891 claim depends upon

24   whether federal law authorized and/or immunized Verizon's alleged activities, then under *Grable*

25   this action necessarily raises issues of federal law.  Section 2891 simply does not apply if legal

26   ─────────────────────

27   identical to those presented here.  *See Terkel*, 2006 WL 2088202.  And this Court stayed all
     discovery on similar claims in *Hepting*.  *See* No. C-06-672 (VRW), 2006 WL 2038464.

28   ─────────────────────

1    process authorized the actions in question, and these issues of federal law are inherently

2    embedded in Plaintiffs' claims.  Indeed, for Plaintiffs to prevail in their state law claim under

3    section 2891, the Court would be required to resolve whether any federal legal process

4    authorized Verizon's actions such that federal law is intrinsically intertwined with Plaintiffs'

5    state law claim.

6        For substantially similar reasons, Plaintiffs' cause of action under the California

7    Constitution also necessarily requires the resolution of questions of federal law.  To establish "a

8    claim under the California right to privacy, a plaintiff must first demonstrate three elements: (1) a

9    legally protected privacy interest; (2) a reasonable expectation of privacy under the

10   circumstances; and (3) conduct by the defendant that amounts to a serious invasion of the

11   protected privacy interest."  *Leonel v. American Airlines, Inc.*, 400 F.3d 702, 712 (9th Cir. 2005).

12   While state laws can provide greater protections for its citizens than federal law, the state may

13   only do so with respect to state operations such as for state law enforcement.  Here, however, the

14   Complaint asserts that Verizon cooperated with a federal agency in providing records to that

15   agency.  For this reason, an individual may only have a legally protect privacy interest and a

16   reasonable expectation of privacy to the extent that the alleged disclosures in question were not

17   authorized by federal law.  Thus, as is the case with Plaintiffs' section 2891 claim, whether

18   Plaintiffs have either a legally protected privacy interest or a reasonable expectation of privacy

19   necessarily turns on questions of federal statutes and other federal legal process.  Indeed,

20   Plaintiffs' claim under the California Constitution could not proceed without a judicial

21   determination that Verizon did *not* have federal authorization to allegedly provide these records.

22   Moreover, whether the alleged disclosures were authorized under federal law, is not simply a

23   factual question that implicates state secrets, but turns on legal questions regarding the scope and

24   meaning of federal statutes and other law.  These are substantial federal questions that will

25   necessarily be litigated if this action proceeds to the merits and therefore are embedded within

26   Plaintiffs' state law right to privacy claim.

27        Any serious consideration of Plaintiffs' claims establishes that Plaintiffs are incorrect in

28

1    asserting, *see* Plaintiffs' Memorandum in Support of the Motion to Remand ("Plts. Mem.") at 17-

2    19, that federal law is only relevant as a defense to Plaintiffs' claims.  Section 2891, on its face,

3    requires a consideration of whether lawful process has been obtained, so Plaintiffs will be wholly

4    unable to establish their claim without a consideration of federal law and application of state

5    secrets to that law for the reasons above.[3]  The same is true for Plaintiffs' right to privacy claim.

6    The federal issues regarding lawful process and authorization must be resolved in order Plaintiffs

7    to bring their claims, and are not mere defenses.  Moreover, as discussed below, federal common

8    law matters going to the justiciability of this case and whether it must be dismissed on state

9    secrets grounds are threshold issues to be resolved immediately; they are not mere affirmative

10   defenses of defendants that otherwise would not support removal.  Plaintiffs also incorrectly

11   claim that, unlike *Grable*, the issues in this case turn on a "'fact-bound and situation-specific'

12   inquiry" rather than legal issues.  *Id.* at 19.  As discussed above, a host of federal common law

13   and other federal law issues going to the justiciability of this case, including the state secrets

14   privilege and *Totten*/*Tenet* bar, must necessarily be resolved before any consideration of the

15   factual underpinnings of Plaintiffs' claims proceeds.

16           **B.    Plaintiffs' Claims are Completely Preempted By A Comprehensive
                     Body of Federal Statutory and Common Law Regarding Alleged
17                   Foreign Intelligence Surveillance**

18           This action was also properly removed to federal court under the complete preemption

19   doctrine.  "The Supreme Court has concluded that the preemptive force of some federal statutes

20   is so strong that they 'completely preempt' an area of state law.  *In re Miles*, 430 F.3d 1083, 1088

21   (9th Cir. 2005) (citation omitted); *see also Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58,

22   63-64 (1987); *ARCO Environmental Remediation, L.L.C. v. Dep't of Health and Envnt'l Quality*,

23   213 F.3d 1108, 1114 (9th Cir. 2000) ("a state-created cause of action can be deemed to arise

24   under federal law where [] federal law completely preempts state law").  "'In such instances, any

25

26           [3]  The California statute's separate section dealing with an affirmative defense based upon
27   receipt of government subpoena or other process, *see* Cal. Pub. Util. § 2894, buttresses this
     conclusion.

28

1  claim purportedly based on that preempted state law is considered, from its inception, a federal

2  claim, and therefore arises under federal law.'" *In re Miles*, 430 F.3d at 1088 (quoting *Balcorta*

3  *v. Twentieth Century-Fox Film Corp.*, 208 F.3d 1102, 1107 (9th Cir. 2000)).  Here, Plaintiffs'

4  causes of action under state law are completely preempted by the Constitution's vesting of

5  exclusive power over foreign affairs and intelligence gathering functions in the federal

6  government and also by the comprehensive and pervasive federal statutory and common law

7  regarding federal intelligence surveillance.

8      At the outset, the very structure of the federal constitution completely preempts Plaintiffs'

9  state law claims to the extent they seek state court oversight of alleged federal intelligence

10 operations.  There simply are no state responsibilities for foreign intelligence gathering of the

11 kind at issue in this action.  Such powers, by constitutional design, are reserved exclusively to the

12 federal government.  *See* Part II.A.  Moreover, acquisition of foreign intelligence is obviously an

13 essential part of the national security function.  Indeed, as the Supreme Court has stressed, there

14 is "paramount federal authority in safeguarding national security," *Murphy v. Waterfront*

15 *Comm'n of New York Harbor*, 378 U.S. 52, 76 n.16 (1964) (quotation omitted), as "[f]ew

16 interests can be more compelling than a nation's need to ensure its own security." *Wayte v.*

17 *United States*, 470 U.S. 598, 611 (1985); *see also Curtiss-Wright Export Corp.*, 299 U.S. at 320

18 (the President "has his confidential sources of information.  He has his agents"; "especially is this

19 true in time of war").  In particular, "[g]athering intelligence information" is within the

20 President's constitutional responsibility for the security of the Nation as the Chief Executive and

21 as Commander in Chief of our Armed forces.  *Marchetti*, 466 F.2d at 1315.  Finally, it is

22 apparent under the *McCulloch* doctrine described above that neither the states, nor others seeking

23 to enforce state laws, may impede or intrude upon such exclusively federal functions.  *See*

24 *McCulloch*, 17 U.S. at 326-27.

25     Thus, Plaintiffs' state law claims are completely preempted because the federal

26 constitutional structure itself leaves no room for such claims directed at alleged foreign

27 intelligence gathering functions.  Given exclusivity of federal law, state law simply has no power

28

1    to operate in the manner Plaintiffs attempt to assert vis-a-vis the federal government's operations.

2    For this reason alone, Plaintiffs' state law claims are cognizable only in federal court.

3         Second, several federal statutes completely preempt any state law remedies available to

4    Plaintiffs.  First and foremost, Section 6 of the National Security Agency Act of 1959, Pub. L.

5    No. 86-36, § 6, 73 Stat. 63, 64, codified at 50 U.S.C. § 402 note, provides:  "[N]othing in this

6    Act *or any other law* . . . shall be construed to require the disclosure of the organization or any

7    function of the National Security Agency, of any information with respect to the activities

8    thereof, or of the names, titles, salaries, or number of persons employed by such agency."  *Id.*

9    (emphasis added).  Section 6's breadth is sweeping and covers "any other law," including any

10   state law causes of actions cited by Plaintiffs.  Section 6 reflects a "congressional judgment that

11   in order to preserve national security, information elucidating the subjects specified ought to be

12   safe from forced exposure."  *The Founding Church of Scientology of Washington, D.C., Inc. v.*

13   *Nat'l Security Agency*, 610 F.2d 824, 828 (D.C. Cir. 1979); *accord Hayden v. Nat'l Security*

14   *Agency*, 608 F.2d 1381, 1389 (D.C. Cir. 1979).  Thus, in enacting Section 6, Congress was "fully

15   aware of the 'unique and sensitive' activities of the [NSA] which require 'extreme security

16   measures,'" *Hayden*, 608 F.2d at 1390 (citing legislative history), and "[t]he protection afforded

17   by section 6 is, by its very terms, absolute." *Linder v. Nat'l Security Agency*, 94 F.3d 693, 698

18   (D.C. Cir. 1996).  Construing the provisions of state law underlying Plaintiffs' Complaint to

19   require the disclosure of "any" information "with respect to the activities" of the NSA would

20   therefore violate Congress' clear intent regarding the exclusivity of federal law in the field of

21   national security.

22        Further, in section 102A(i)(1) of the Intelligence Reform and Terrorism Prevention Act of

23   2004, Pub. L. No. 108-458, 118 Stat. 3638 (Dec. 17, 2004), codified at 50 U.S.C. § 403-1(i)(1),

24   Congress similarly conferred upon the Director of National Intelligence the authority and

25   responsibility to "protect intelligence sources and methods from unauthorized disclosure."  *Id.*

26   This unquestionably includes the protection of NSA sources and methods of gathering

27   intelligence.  *See* Negroponte Decl. ¶11.  Indeed, it includes in particular information about the

28

1  alleged involvement of a telecommunication carrier's role in providing assistance to the NSA,

2  information which the DNI explains can neither be confirmed nor denied in order to protect

3  intelligence sources and methods.  *See id*. ¶12.  The authority to protect intelligence sources and

4  methods from disclosure is rooted in the "practical necessities of modern intelligence gathering,"

5  *Fitzgibbon v. CIA*, 911 F.2d 755, 761 (D.C. Cir. 1990), and has been described by the Supreme

6  Court as both "sweeping," and "wideranging."  *Snepp v. United States*, 444 U.S. 507, 509 (1980).

7   *See United States v. Koreh*, 144 F.R.D. 218, 222 (D.N.J. 1992) (recognizing that the then-

8  Director of Central Intelligence had "sweeping power" to protect intelligence sources and

9  methods under 50 U.S.C. § 403(d)(3)) (quoting *Central Intelligence Agency v. Sims*, 471 U.S.

10  159, 168-69 (1985)).  These "sweeping" and "wideranging" federal prerogatives also

11  demonstrate Congress' judgment that matters pertaining to foreign intelligence gathering are

12  exclusively federal decisions that the states' laws cannot impact in any way.  State law has no

13  role in these exclusively federal operations, and, in particular, state privacy laws simply cannot

14  provide the basis for ordering the disclosure of national security information controlled by the

15  federal government or the injunction of such federal operations, which are at the heart of

16  Plaintiffs' request for relief.  Because there is no role for the operation of state laws in this

17  regard, Plaintiffs' claims are completely preempted by the operation of the Constitution and

18  federal statutes and are cognizable, if at all, only in a federal forum.

19      Two bodies of constitutionally based federal common law — the state secrets privilege

20  and the *Totten*/*Tenet* bar — also entirely dominate this action and are federal issues that must be

21  resolved before the Court even assumes jurisdiction over Plaintiffs' claims and therefore also

22  completely preempt state law here.  *See generally New SD, Inc. v. Rockwell Int'l Corp.*, 79 F.3d

23  953, 955 (9th Cir. 1996) (holding that the federal common law concerning "government contract

24  matters having to do with national security" completely preempts state-law contract claims).

25  Indeed, the issues of foreign intelligence gathering, alleged federal espionage agreements, and

26  federal state secrets are similar to those that formed the basis of federal question jurisdiction in

27  *Oneida Indian Nation v. County of Oneida*, 414 U.S. 661, 675 (1974).

28

1    In *Oneida Indian Nation*, the Supreme Court held that a complaint was cognizable in

2    federal court under federal question jurisdiction because of the federal common law pertaining to

3    possession of Indian tribal lands.  These were issues purely of federal law between the federal

4    government and the Indian tribes, even though the possessor claim was stated as one of New

5    York law.  *Id.* at 670 ("Indian title is a matter of federal law and can be extinguished only with

6    federal consent") (citation omitted).  As is the case with matters relating to Indian law, states

7    have no role in resolving the Indian tribes' right of possession under federal law.  Similarly,

8    whether through the legislative, executive, or judicial process, states have no authority to regulate

9    the federal government's foreign intelligence surveillance activities, alleged espionage contracts,

10   or resolve the issues of state secrets.  *See United States v. Pink*, 315 U.S. 203, 233 (1942)

11   ("Power over external affairs is not shared by the States; it is vested in the national government

12   exclusively.  It need not be so exercised as to conform to state laws or state policies whether they

13   be expressed in constitutions, statutes, or judicial decrees.").

14   At bottom, the issues in this case are intrinsically federal ones and go to the heart of

15   alleged federal government operations in areas where the States have no power to interfere or

16   participate under the constitutional structure.  In light of the exclusivity of these various bodies of

17   federal law, all state law in this field must be completely preempted and therefore must be

18   resolved exclusively in the federal courts.

19                                **CONCLUSION**

20   Accordingly, the United States respectfully requests that the Court grant Defendants'

21   motion to stay pending a decision by the JPML and deny Plaintiffs' motion to remand this civil

22   action.

23                                      Respectfully submitted,

24                                      PETER D. KEISLER
                                        Assistant Attorney General
25
26                                      CARL J. NICHOLS
                                        Deputy Assistant Attorney General
27                                      JOSEPH H. HUNT
                                        Director, Federal Programs Branch
28

1

2                                              *s/ Anthony J. Coppolino*
                                               ANTHONY J. COPPOLINO
3                                              Special Litigation Counsel

4                                              *s/ Renée S. Orleans*
                                               RENEE S. ORLEANS
5                                              ANDREW H. TANNENBAUM
                                               ALEXANDER K. HAAS
6                                              renee.orleans@usdoj.gov
                                               andrew.tannebaum@usdoj.gov
7                                              alexander.haas@usdoj.gov
                                               Trial Attorneys
8                                              U.S. Department of Justice
                                               Civil Division, Federal Programs Branch
9                                              20 Massachusetts Avenue, NW
                                               Washington, D.C. 20001
10                                             Phone: (202) 514-4505/(202) 514-4782/(202) 307-
                                               3937 Fax: (202) 616-8470/(202) 616-8202
11

      Dated: August 4, 2006                    *Attorneys for the United States of America*
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## CERTIFICATE OF SERVICE

2      I hereby certify that a copy of the foregoing **Statement of Interest of the United States**

3  **in Support of Defendants' Motion to Stay & in Opposition to Plaintiffs' Motion to Remand**

4      was lodged with the Court's CM/ECF system and was served thereby this 4th day of August

5      2006 on:

6      ANN BRICK
       AMERICAN CIVIL LIBERTIES UNION
7      FOUNDATION OF NORTHERN CALIFORNIA
       39 Drumm Street
8      San Francisco, CA 94111

9      LAURENCE F. PULGRAM
       FENWICK & WEST LLP
10     275 Battery Street, Suite 1600
       San Francisco, CA 94111

11
       CLARE PASTORE
12     ACLU FOUNDATION OF SOUTHERN CALIFORNIA
       1616 Beverly Blvd.
13     Los Angeles, CA 90026

14     DAVID BLAIR-LOY
       ACLU FOUNDATION OF SAN DIEGO/IMPERIAL COUNTIES
15     PO Box 87131
       San Diego, CA 92138

16
       JOHN ROGOVIN
17     WILMER CUTLER PICKERING HALE AND DOOR LLP
       1875 Pennsylvania Avenue, NW
18     Washington, DC 20006-3642

19     MARK D. FLANAGAN
       ELIZABETH ROGERS
20     WILMER CUTLER PICKERING HALE AND DOOR LLP
       1117 California Avenue
21     Palo Alto, CA 94304

22

23

24
                                                   *s/ Renée S. Orleans*
25                                                 Renée S. Orleans

26

27

28

---