ANN BRICK              (CSB No. 65296)
NICOLE A. OZER         (CSB No. 228643)
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF NORTHERN CALIFORNIA
39 Drumm Street
San Francisco, CA  94111
Telephone: 415/621-2493; Facsimile: 415/255-8437
abrick@aclunc.org, nozer@aclunc.org

LAURENCE F. PULGRAM  (CSB No. 115163)
MITCHELL ZIMMERMAN  (CSB No. 88456)
JENNIFER L. KELLY      (CSB No. 193416)
SAINA SHAMILOV         (CSB No. 215636)
CANDACE MOREY         (CSB No. 233081)
FENWICK & WEST LLP
275 Battery Street
San Francisco, CA  94111
Telephone: 415/875-2300; Facsimile: 415/281-1350
lpulgram@fenwick.com;
mzimmerman@fenwick.com; jkelly@fenwick.com
sshamilov@fenwick.com; cmorey@fenwick.com

Attorneys for Plaintiffs
*Additional counsel listed on following page*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| DENNIS P. RIORDAN, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>VERIZON COMMUNICATIONS, INC., a corporation; and DOES 1 through 20,<br><br>Defendants. | Case No. C-06-3574 VRW<br><br>**PLAINTIFFS' JOINT RESPONSE TO STATEMENT OF INTEREST OF THE UNITED STATES IN SUPPORT OF DEFENDANTS' MOTIONS TO STAY AND IN OPPOSITION TO PLAINTIFFS' MOTIONS TO REMAND** |
| TOM CAMPBELL, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>AT&T COMMUNICATIONS OF CALIFORNIA, et al.,<br><br>Defendants. | Date:   August 24, 2006<br>Time:   2:00 p.m.<br>Dept:   6, 17th Floor<br>Judge:  The Hon. Vaughn R. Walker<br><br>Case No. C-06-3596 VRW |

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1

**ADDITIONAL COUNSEL**

2

PETER ELIASBERG        (CSB No. 189110)
CLARE PASTORE          (CSB No. 135933)

3

AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF SOUTHERN CALIFORNIA

4

1616 Beverly Boulevard
Los Angeles, CA  90026

5

Telephone:     213/977-9500
Facsimile:      213/250-3919

6

peliasberg@aclu-sc.org, cpastore@aclu-sc.org

7

DAVID BLAIR-LOY        (CSB No. 229235)

8

AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF SAN DIEGO/IMPERIAL COUNTIES
P.O. Box 87131

9

San Diego, CA  92138

10

Telephone:     619/232-2121
Facsimile:      619/232-0036

11

dblairloy@aclusandiego.org

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

# TABLE OF CONTENTS

**Page(s)**

ADDITIONAL COUNSEL ................................................................................................ i

INTRODUCTION ........................................................................................................... 1

ARGUMENT .................................................................................................................. 2

I.    THE COURT SHOULD DISREGARD THE GOVERNMENT'S UNTIMELY
      SUBMISSION ........................................................................................................ 2

II.   POTENTIAL INTERVENTION BY THE GOVERNMENT IS IRRELEVANT
      TO THE MOTIONS TO REMAND ........................................................................... 3

      A.    A Court May Not Consider a Motion to Intervene Before Determining
            Whether It Has Subject Matter Jurisdiction Over a Removed Case ...................... 3

      B.    Intervention by the United States Would Not be Grounds for Removal
            Under Section 1442(a) ..................................................................................... 5

III.  PLAINTIFFS' CLAIMS ARE NOT COMPLETELY PREEMPTED ............................. 7

      A.    The U.S. Constitution Does Not Completely Preempt Plaintiffs' Claims ............. 7

      B.    Neither the National Security Agency Act Nor the Intelligence Reform Act
            Completely Preempt Plaintiffs' Claims ............................................................ 10

IV.   *GRABLE* DOES NOT PROVIDE A BASIS FOR FEDERAL JURISDICTION IN
      THIS CASE ........................................................................................................... 11

V.    THE *TOTTEN* DOCTRINE AND THE STATE SECRETS PRIVILEGE
      PROVIDE NO BASIS FOR FEDERAL JURISDICTION ............................................. 13

      A.    This Court Should Not Decide *Totten's* Applicability Prior to Determining
            Subject Matter Jurisdiction .............................................................................. 13

      B.    Neither *Totten* Nor the State Secrets Privilege Creates Federal Question
            Jurisdiction Under *Grable* or Under The Complete Preemption Doctrine .......... 14

CONCLUSION ............................................................................................................... 15

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1

**TABLE OF AUTHORITIES**

2

**Page(s)**

3

4    <u>**CASES**</u>

5    *American Ins. Ass'n v. Garamendi,*
    539 U.S. 396 (2003) ........................................................................................... 9

6    *Barbara v. NYSE,*
    99 F.3d 49 (2d Cir. 1996) ................................................................................... 5

7

*Baughman v. State of California,*
8        38 Cal. App. 4th 182 (1995) ............................................................................. 12

9    *Bell v. City of Kellogg,*
    922 F.2d 1418 (9th Cir. 1991) ............................................................................ 4

10   *Beneficial Nat'l Bank v. Anderson,*
    539 U.S. 1 (2003) ............................................................................................. 10

11
*Boyle v. United Techs. Corp.,*
12       487 U.S. 500 (1988) ....................................................................................... 2, 8

13   *Bromwell v. Mich. Mut. Ins. Co.,*
    115 F.3d 208 (3d Cir. 1997) ............................................................................... 5

14   *Bruns v. NCUA,*
    122 F.3d 1251 (9th Cir. 1997) ........................................................................ 3, 5

15   *Canatella v. State of California,*
    404 F.3d 1106 (9th Cir. 2005) ............................................................................ 4

16
*Cook v. Peter Kiewit Sons Co.,*
17       775 F.2d 1030 (9th Cir. 1985) ............................................................................ 6

18   *Coyne v. American Tobacco Co.,*
    183 F.3d 488 (6th Cir. 1999) ............................................................................. 5

19   *Empire HealthChoice Assurance, Inc. v. McVeigh,*
    126 S. Ct. 2121 (2006) ................................................................................. 1, 11

20   *Fent v. Okl. Water Res. Bd.,*
    235 F.3d 553 (10th Cir. 2000) ............................................................................ 5

21
*Florida v. Cohen,*
22       887 F.2d 1451 (11th Cir. 1989) .......................................................................... 6

*Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.,*
23       125 S. Ct. 2363 (2005) ............................................................................. passim

24   *Hamdan v. Rumsfeld,*
    126 S. Ct. 2749 (2006) ....................................................................................... 9

25   *Heine v. Raus,*
    261 F. Supp. 570 (D. Md. 1966) ...................................................................... 11

26   *Heine v. Raus,*
    399 F.2d 785 (4th Cir. 1968) ............................................................................ 11

27

28

PLAINTIFFS' JOINT RESPONSE TO U.S.
STATEMENT OF INTEREST        -iii-       CASE NOS. C 06-3574 VRW
                                       C 06-3596 VRW

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1

**TABLE OF AUTHORITIES**
(continued)

2

**Page(s)**

3

*Hepting v. AT&T Corp.,*
   No. C-06-672, 2006 WL 2038464,
4
   2006 U.S. Dist. LEXIS 49955
   (N.D. Cal. Jul. 20, 2006) ...................................................................................... 10, 13

5
*Hill v. NCAA,*
   7 Cal. 4th 1 (1994) ..................................................................................................... 12
6

*In Re Estate of Bobby Masters,*
7
   361 F. Supp. 2d 1303 (E.D. Ok. 2005) ...................................................................... 6

8
*In re the Marriage of Dyche,*
   No. 05-1116, slip copy, 2005 WL 1993457
9
   (D. Kan. Aug. 16, 2005)............................................................................................... 7

10
*Indiana v. Adams,*
   892 F. Supp. 1101 (S.D. Ind. 1995) ........................................................................... 6

11
*Int'l Primate Prot. League v. Adm'rs of Tulane Educ. Fund,*
   500 U.S. 72 (1991).......................................................................................... 4, 5, 6, 13

12
*Jefferson County, Alabama v. Acker,*
13
   527 U.S. 423 (1999) ..................................................................................................... 7

14
*Libhart v. Santa Monica Dairy Co.,*
   592 F.2d 1062 (9th Cir. 1979)...................................................................................... 3

15
*Linder v. DOD,*
   133 F.3d 17 (D.C. Cir. 1998) ..................................................................................... 10
16

*Linder v. NSA,*
   94 F.3d 693 (D.C. Cir. 1996) ............................................................................... 10, 11
17

*Linder v. Portocarrero,*
18
   963 F.2d 332 (11th Cir. 1992) ................................................................................... 11

19
*Loder v. City of Glendale,*
   14 Cal. 4th 846 (1997) ............................................................................................... 12
20

*Maine Ass'n of Interdependent Neighborhoods v.*
   *Comm'r, Maine Dep't of Human Servs.,*
21
   876 F.2d 1051 (1st Cir. 1989) ..................................................................................... 5

22
*Mesa v. California,*
   489 U.S. 121 (1989)...................................................................................................... 7
23

*New SD, Inc. v. Rockwell Int'l Corp.,*
   79 F.3d 953 (9th Cir. 1996)........................................................................................ 14
24

*Oneida Indian Nation v. County of Oneida,*
25
   414 U.S. 661 (1974) ................................................................................................... 15

*Patrickson v. Dole Foods Co.,*
26
   251 F.3d 795 (9th Cir. 2001),
   *aff'd* 588 U.S. 468 (2003) ........................................................................................ 10

27

28

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

# TABLE OF AUTHORITIES
### (continued)

Page(s)

*Porter v. Rathe,*
  No. 98-331, 1998 WL 355499,
  1998 U.S. Dist. LEXIS 9873
  (D. Or. Jun. 18, 1998) ........................................................................................ 7

*Re-Con Bldg. Prods. v. Guardian Ins. Co.,*
  No. C-00-0327, 2000 WL 432830,
  2000 U.S. Dist. LEXIS 5241 (N.D. Cal. Apr. 13, 2000) ...................................... 5

*Roach v. W. Va. Reg'l Jail & Corr. Auth.,*
  74 F.3d 46 (4th Cir. 1996) .................................................................................... 5

*Rubin v. United States,*
  449 U.S. 424 (1981) .............................................................................................. 6

*Smith v. Wis. Dep't of Agric.,*
  23 F.3d 1134 (7th Cir. 1994) ............................................................................. 3, 5

*Stone v. Powell,*
  428 U.S. 465 (1976) ............................................................................................ 13

*Tafflin v. Levitt,*
  493 U.S. 455 (1990) ............................................................................................ 13

*Tenet v. Doe,*
  544 U.S. 1 (2005) ................................................................................................ 13

*Terkel v. AT&T Corp.,*
  No. 06 CV 02837, 2006 WL 2088202,
  2006 U.S. Dist. LEXIS 50812 (N.D. Ill. Jul. 25, 2006) ...................................... 14

*United States v. Koreh,*
  144 F.R.D. 218 (D.N.J. 1992) ............................................................................ 10

*United States v. Pink,*
  315 U.S. 203 (1942) ............................................................................................ 15

*United States v. Todd,*
  245 F.3d 691 (8th Cir. 2001) ............................................................................. 6, 7

*Univ. of S. Ala. v. American Tobacco Co.,*
  168 F.3d 405 (11th Cir. 1999) .............................................................................. 5

*Vang v. Healy,*
  804 F. Supp. 79 (E.D. Cal. 1992) ............................................................... 1, 3, 4, 5

*Wallis v. Pan American Petroleum Corp.,*
  384 U.S. 63 (1966) ................................................................................................ 9

*Youngstown Sheet & Tube Co. v. Sawyer,*
  343 U.S. 579 (1952) .............................................................................................. 9

## STATUTES

28 U.S.C. § 1407 ....................................................................................................... 3

28 U.S.C. § 1442 ....................................................................................................... 7

28 U.S.C. § 1442(a) .................................................................................................. 5

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

PLAINTIFFS' JOINT RESPONSE TO U.S.
STATEMENT OF INTEREST

v

CASE NOS. C 06-3574 VRW
C 06-3596 VRW

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**TABLE OF AUTHORITIES**
**(continued)**

**Page(s)**

28 U.S.C. § 1442(a)(1) ........................................................................................................... 5

28 U.S.C. § 1447(c) .......................................................................................................... 4, 5

50 U.S.C. § 402 ........................................................................................................... 10, 11

50 U.S.C. § 403-1(i)(1) ............................................................................................... 10, 11

**<u>RULES</u>**

Fed. R. Civ. P. 24 ................................................................................................................. 4

Local Rule 7-3(d) ................................................................................................................. 3

**<u>OTHER AUTHORITIES</u>**

7C Charles Alan Wright, Arthur R. Miller & May Kay Kane,
    Federal Practice and Procedure § 1917 (2d ed. 2004) ............................................. 4

U.S. Const. art. IV, § 3, cl. 2 ............................................................................................... 9

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

**INTRODUCTION**

The sum and substance of the government's untimely jurisdictional argument is that this is a "quintessentially federal case." But in a case where, as here, there are no federal claims pleaded, no federal defendants sued, and no relief against the federal government requested, jurisdiction must be premised on more than just the federal government's desire to have the case decided by a federal judge. It must be premised on the doctrines that govern the assertion of federal jurisdiction where state law claims against nonfederal defendants have been filed in state court. In this case, the relevant doctrines are found in the "embedded federal question" doctrine of *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 125 S. Ct. 2363, 2368 (2005) and in the doctrine of complete preemption. *See*, *e.g.*, *Empire HealthChoice Assurance, Inc. v. McVeigh*, 126 S. Ct. 2121, 2135 (2006).

The government pays lip service to these doctrines setting forth the rules for determining whether this Court has subject matter jurisdiction over Plaintiffs' claims but substitutes rhetoric for the careful analysis these doctrines demand. The government essentially pours these doctrines into a blender, adds a dollop of truism about federal supremacy in matters of national defense, and produces a new recipe for "national security jurisdiction." As demonstrated below—and in Plaintiffs' prior briefs—application of settled law reveals that the government's claims of "arising under" jurisdiction and "complete preemption" are utterly insupportable, even when blended together as the government does in its Statement of Interest.

The principal new argument raised by the government is that its intervention in these actions will confer the missing jurisdictional ingredient. It will not, for two reasons: *First*, this Court lacks jurisdiction to consider the government's motion to intervene until it has ruled on Plaintiffs' motions to remand. *See Vang v. Healy*, 804 F. Supp. 79, 81 (E.D. Cal. 1992). *Second*, because Plaintiffs seek no relief against it, the government cannot satisfy the section 1442(a)(1) requirement that the action be commenced *against* a federal officer or agency.

The government's remaining arguments are equally flawed. Jurisdiction is lacking under *Grable* because the government has not—and cannot—demonstrate that the resolution of a disputed interpretation of federal law is an essential element of either of Plaintiffs' claims; indeed,

1    even the defense of federal authorization is purely a question of fact.  The government's complete

2    preemption arguments focus solely on the federal interests at stake, ignoring the admonition that

3    the involvement of "an area of uniquely federal interest . . . establishes a necessary, not a

4    sufficient, condition for the displacement of state law."  *Boyle v. United Techs. Corp.,* 487 U.S.

5    500, 507 (1988).  Plaintiffs' motions to remand should be granted.

<u>**ARGUMENT**</u>

**I.    THE COURT SHOULD DISREGARD THE GOVERNMENT'S UNTIMELY
       SUBMISSION.**

The government's submission of its "Statement of Interest"[1] after the completion of

briefing on Plaintiffs' remand motions is inexcusably untimely.  Plaintiffs filed these actions in

San Francisco Superior Court on May 26, 2006 and Defendants removed both the first week of

June.  Plaintiffs filed their motion to remand in *Campbell* on June 30 and their motion to remand

in *Riordan* on July 5.  In the meantime, Verizon had already filed its stay motion in *Riordan* and

AT&T filed its stay motion in *Campbell* on June 30.

Desiring to proceed in an orderly fashion, Plaintiffs agreed to a briefing schedule with

Defendants and to a hearing date that this Court subsequently approved.  Pursuant to that

schedule, the parties completed their briefing on August 3.  Then, and only then, on August 4,

2006, did the United States file its Statement of Interest.[2]  While much of that Statement is simply

a rehash of arguments already made by Defendants, it also asserts new, substantive ones.

The government makes no claim that it had only recently learned of the pendency of these

actions on August 4.  Nor could it.  The government knew of these actions by at least June 19,

---

[1]    Plaintiffs cite the Statement of Interest as "Stmt. of Int." throughout this brief, and utilize the same citation format for Verizon's, AT&T's and Plaintiffs' own briefing on the remand motions as they did in their reply papers.

[2]    At the same time it filed its Statement of Interest, the United States filed an administrative motion to have its Motion to Intervene heard on shortened time. The stipulation the government filed in support of its administrative request set out a briefing schedule for the motion and also permitted Plaintiffs, who did not acquiesce in the government's untimely filing, to submit their response to the Statement of Interest on August 16, 2006.  The proposed orders, set forth in the alternative, each permitted the filing of Plaintiffs' response on August 16, 2006.  To date the Court has not ruled on the government's request.  To the extent that it does not approve that stipulation, Plaintiffs respectfully request that the Court disregard both the government's submission and our own.

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1   when AT&T served it with its Response in support of the Verizon MDL transfer motion.  *See*

2   Memorandum of Defendant AT&T Corp. in Support of Verizon's Motion for Transfer and

3   Coordination pursuant to 28 U.S.C. § 1407.[3]  The government offers no explanation whatsoever

4   for its tardy filing, nor has it sought or obtained leave of court to file its Statement of Interest.  *See*

5   Local R. 7-3(d) ("once a reply is filed, no additional memoranda, papers or letters may be filed

6   without prior Court approval.").  Accordingly, Plaintiffs respectfully suggest that the Court

7   disregard the government's untimely Statement in its entirety.

8   **II.    POTENTIAL INTERVENTION BY THE GOVERNMENT IS IRRELEVANT TO**
    **THE MOTIONS TO REMAND.**

9

10   **A.    A Court May Not Consider a Motion to Intervene Before Determining**
     **Whether It Has Subject Matter Jurisdiction Over a Removed Case.**

11       A district court may not consider a motion to intervene before determining whether it has

12   subject matter jurisdiction over a removed case.  *Vang v. Healy*, 804 F. Supp. 79, 83 (E.D. Cal.

13   1992).  The reason is simple:  the federal courts are courts of limited jurisdiction, whose removal

14   jurisdiction is derived solely from Congressional authorization.  *Libhart v. Santa Monica Dairy*

15   *Co.*, 592 F.2d 1062, 1064 (9th Cir. 1979); *Vang,* 804 F. Supp. at 81 (E.D. Cal. 1992).  Thus,

16   where, as here, the court lacks subject matter jurisdiction over the action at the time of removal, it

17   does not have jurisdiction to consider a motion to intervene on the theory that granting

18   intervention will then confer jurisdiction.  *Vang*, 804 F. Supp. at 83; *see Libhart,* 592 F.2d at 1066

19   (district court lacked jurisdiction to grant motion to amend complaint to add federal claim

20   because it lacked jurisdiction over case as removed).  In such circumstances, a remand is

21   mandatory.  *See Bruns v. NCUA*, 122 F.3d 1251, 1257 (9th Cir. 1997)*; Smith v. Wis. Dep't of*

22   *Agric.*, 23 F.3d 1134, 1139 (7th Cir. 1994).

23       *Vang* is directly on point.  There, the court had before it both the plaintiffs' motion to

24   remand and the United States' motion to intervene.  The defendant argued, much as the

25   government does here, that if the case were remanded, the Secretary of Agriculture would

26

27   ───────────────
    [3]   The government moved to intervene in the *Hepting* case on May 13, 2006.  It strains credulity

28   to think that AT&T was not keeping the government apprised of the pendency of other actions
    being filed, including the filing of these two lawsuits in the very same court as *Hepting*.

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1    intervene in state court and immediately remove the case back to federal court.  Thus, argued the

2    defendant, principles of judicial economy counseled against a remand.  The court emphatically

3    disagreed, holding that "federal jurisdiction cannot be based upon the presumed eventual

4    intervention of the United States."  804 F. Supp. at 83.  As the court explained:

5            In order for the Court to have the authority to entertain the Secretary's motion to
             intervene, the Court must already have jurisdiction to hear the case.  Without an
6            independent basis for jurisdiction, the court cannot hear and grant a motion which
             then would give the court jurisdiction.
7

8    *Id.*; 7C Charles Alan Wright, Arthur R. Miller & May Kay Kane, Federal Practice and Procedure

9    § 1917 (2d ed. 2004) ("Intervention cannot cure any jurisdictional defect that would have barred

10   the federal court from hearing the original action."); *see Canatella v. State of California*, 404 F.3d

11   1106, 1113 (9th Cir. 2005) (while Rule 24 provides procedural mechanism for intervention, it

12   "does not itself provide the jurisdictional hook").

13          The government neither discusses nor cites *Vang*.  Instead, it argues that its intervention in

14   the state court upon remand would "automatically" entitle it to remove and that therefore this

15   Court should short-circuit the analysis of whether it currently has subject matter jurisdiction

16   because remand would be "futile."  *See* Stmt. of Int. 4 (citing *Bell v. City of Kellogg*, 922 F.2d

17   1418 (9th Cir. 1991) (permitting dismissal rather than remand where remand is futile)).

18          The government is mistaken.  First, the continued vitality of the "futility exception" to

19   section 1447(c) is at best questionable.  Four months after the decision in *Bell*, the United States

20   Supreme Court issued its decision in *Int'l Primate Prot. League v. Adm'rs of Tulane Educ. Fund*,

21   500 U.S. 72 (1991), *superseded by statute on other grounds*.  There the federal defendant argued

22   it would be futile to remand the case because, once remanded, removal was again inevitable on

23   other grounds.  The Supreme Court, however, declined the invitation to speculate on whether the

24   second attempt at removal would be successful and held that events should be allowed to play

25   themselves out in the state court first.  500 U.S. at 89.  The Court then went on:

26           We also take note, as did the First Circuit, of "the literal words of § 1447(c),
             which, on their face, give . . . no discretion to dismiss rather than remand an
27           action."  *Id.* at 1054.  The statute declares that, where subject matter jurisdiction is
             lacking, the removed case "*shall* be remanded."  28 U.S.C. § 1447(c) (emphasis
28           added).

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1    *Id.* (quoting *Maine Ass'n of Interdependent Neighborhoods v. Comm'r, Maine Dep't of Human*

2    *Servs.*, 876 F.2d 1051, 1054 (1st Cir. 1989)).

3         In light of that decision, the Circuit Courts of Appeals that have since considered the

4    question have either held that there is no futility exception to section 1447(c),[4] or questioned

5    whether the doctrine has survived.[5]  *Cf. Bruns v. NCUA*, 122 F.3d at 1257 (9th Cir. 1997) (not

6    addressing futility doctrine but holding: "Section 1447(c) is mandatory, not discretionary.  *See*

7    *Roach v. W. Va. Reg'l Jail & Corr. Auth.*, 74 F.3d 46, 49 (4th Cir. 1996) (where subject matter

8    jurisdiction is lacking, district court must remand to state court even if futile").

9         But even if the futility exception survived, the "absolute certainty" required to invoke it is,

10   as this Court has observed, an exacting standard.  *Re-Con Bldg. Prods. v. Guardian Ins. Co.*, No.

11   C-00-0327, 2000 WL 432830, *1, 2000 U.S. Dist. LEXIS 5241, *3-4 (N.D. Cal. Apr. 13, 2000).

12   That standard plainly is not met here.  First, as the *Vang* court held:  "[i]t is not for this court in

13   the first instance to decide whether the United States can or must be joined.  The Superior Court

14   must first determine if the United States is entitled to intervene according to its rules."  *Vang*,

15   804 F. Supp. at 83; *see also Int'l Primate*, 500 U.S. at 89.  Second, as next discussed, the

16   government's intervention in these actions in state court would *not* provide a basis to remove.

         **B.    Intervention by the United States Would Not be Grounds for Removal Under
                 Section 1442(a).**

19        The plain language of section 1442(a) permits removal only where an action is

20   "*commenced* in a State court *against* . . . [t]he United States. . . ."  28 U.S.C. § 1442(a)(1)

21   (emphasis added).  Plaintiffs have not "commenced" an action "against the United States;" they

22   have sued Verizon and AT&T.  The language of the statute is unambiguous; it precludes removal

23   by the United States unless the action is commenced against it.  *See Rubin v. United States*, 449

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

---

4    *Coyne v. American Tobacco Co.*, 183 F.3d 488, 496-97 (6th Cir. 1999); *Bromwell v. Mich.
Mut. Ins. Co.*, 115 F.3d 208, 214 (3d Cir. 1997); *Roach v. W. Va. Reg'l Jail & Corr. Auth.*, 74
F.3d 46, 49 (4th Cir. 1996); *Smith*, 23 F.3d at 1139.

5    *Fent v. Okl. Water Res. Bd.*, 235 F.3d 553, 557 (10th Cir. 2000); *Univ. of S. Ala. v. American
Tobacco Co.*, 168 F.3d 405, 410 (11th Cir. 1999); *Barbara v. NYSE*, 99 F.3d 49, 56 n.4 (2d Cir.
1996) (dictum).

U.S. 424, 430 (1981) ("When we find the terms of a statute unambiguous, judicial inquiry is complete, except in 'rare and exceptional circumstances.'").  *See also Int'l Primate,* 500 U.S. at 79 (interpreting 28 U.S.C. § 1442(a)(1):  "the starting point in every case involving construction of a statute is the language itself") (internal quotation omitted)).

While the government may potentially be entitled to intervene at an appropriate time, in the appropriate court, being an interested party is not the same as being a party against whom an action is being prosecuted.  Removal under the circumstances of this case—where no judicial relief has been requested against the government—simply is not authorized by section 1442(a)(1). *See e.g., In Re Estate of Bobby Masters*, 361 F. Supp. 2d 1303, 1307 (E.D. Ok. 2005) (federal government's intervention in state court probate proceeding did not support removal because state court matter not "commenced against" United States); *compare Indiana v. Adams*, 892 F. Supp. 1101, 1105 (S.D. Ind. 1995) (§ 1442(a)(1) does not permit removal where court denied FBI officer's motion to quash deposition subpoena in state criminal proceeding, but no contempt proceedings yet initiated; no state court proceeding had been commenced against the federal officer), *with Florida v. Cohen*, 887 F.2d 1451, 1454 (11th Cir. 1989) (federal officer may remove *after* state court initiates contempt proceedings for failure to respond to subpoena in state court criminal prosecution); *see also Cook v. Peter Kiewit Sons Co.*, 775 F.2d 1030, 1034 (9th Cir. 1985) (although not addressing the intervention issue presented here, nevertheless confirming:  "The only prerequisite to removal of a civil action under § 1442 is that it be *brought against* a federal officer or agency."  (emphasis in original) (internal quotation omitted)).

The cases the government cites do not support its broad contention that intervention always confers the right to remove.  *United States v. Todd*, 245 F.3d 691 (8th Cir. 2001), is both analytically deficient and factually distinct.  *Todd* was a state freedom of information act case in which plaintiff sued the state police seeking documents that the police possessed but which belonged to the United States Attorney.  The court did not even address *Todd*'s argument that his suit was not against the United States.  The closest it came (and the portion of the opinion relied upon by the government) was when it stated: "we reject Mr. Todd's contention that the removal was improper . . . simply because his original complaint had a non-federal cast." *Id.* at 693 (citing

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1  *Jefferson County, Alabama v. Acker*, 527 U.S. 423, 431 (1999)).  The discussion of a "nonfederal

2  cast" in *Acker*, however, is completely unrelated to the question of whether the United States'

3  status as an intervenor allows removal.  The cited portion of *Acker* notes that section 1442

4  removal differs from "arising under" removal because the well-pleaded complaint rule does not

5  apply in a section 1442 case and that "the federal question element [of section 1442] is met if the

6  defense depends on federal law."  *Acker,* 527 U.S. at 431.[6]  *Todd* thus does not support the

7  government's position here.

8      Moreover, the relief sought in *Todd* was production of documents belonging to the United

9  States.  Although those documents were in the hands of the state police, they belonged to the

10  United States; thus, the named defendant was, in effect, a proxy for the United States.  Plaintiffs'

11  lawsuits against AT&T and Verizon do not seek to recover anything belonging to the

12  government.  *Id.* at 692.  They seek only to compel the telephone companies to stop turning over

13  private information.  The fact that an injunction may affect Defendants' future interactions with

14  the government does not make this a lawsuit against the government any more than would a suit

15  to require a company to obey state anti-pollution laws in processing mineral deposits from federal

16  lands.  That the suit might limit the extent of the government's future business with that company

17  does not make it a suit against the government.[7]

18  **III.    PLAINTIFFS' CLAIMS ARE NOT COMPLETELY PREEMPTED.**

19      **A.    The U.S. Constitution Does Not Completely Preempt Plaintiffs' Claims.**

20      The government's argument in Parts II.A and II.A.1 of its Statement of Interest present a

21  confused mixture of two distinct issues:  (1) whether Plaintiffs' state law claims are completely

---

22  [6]    *Acker*'s reference to the "federal question element" of section 1442 refers to the requirement
23  that a suit not only be commenced against the federal government, but that the federal defendant
    also have a colorable federal defense.  *See Mesa v. California*, 489 U.S. 121, 129 (1989).

24  [7]    *In re the Marriage of Dyche*, No. 05-1116, slip copy, 2005 WL 1993457 (D. Kan. Aug. 16,
25  2005), is equally inapposite.  The *Dyche* court held removal was proper because the suit was in
    essence a declaratory judgment action against the United States "challenging the IRS' claimed
26  authority to collect federal estate taxes."  *Id.* at * 3.  In *Porter v. Rathe*, No. 98-331, 1998 WL
    355499, 1998 U.S. Dist. LEXIS 9873 (D. Or. Jun. 18, 1998), plaintiff named no defendant, but
27  served the United States, which claimed an interest in the property that was the subject of the
    state court proceeding.  It was thus a necessary party against whom judicial relief would be
28  rendered; it should have been named as a defendant in the first instance.  *Id.* WL at *1, LEXIS at
    *2.

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1   preempted because they impermissibly intrude in areas reserved for the federal government under

2   the Constitution; and (2) whether Plaintiffs' claims "arise under" federal law because there is a

3   federal issue embedded within the affirmative elements of Plaintiffs' state law claims that must

4   necessarily be determined, as described in *Grable*, 125 S. Ct. at 2368.  The government's

5   intermingling of these distinct doctrines does not succeed in manufacturing removal jurisdiction

6   under either.

7        The government's platitudes—that a state cannot regulate the federal government, and

8   that the federal government has primacy in the area of foreign relations—are unexceptional, but

9   equally unpersuasive.  In the first place, the government inaccurately suggests that Plaintiffs are

10  using state law to regulate the federal government.  Stmt. of Int. 6.  The only conduct sought to be

11  regulated here is the voluntary conduct of AT&T and Verizon.  *No relief* has been sought against

12  the government or to limit its rights to exercise its authority to conduct intelligence activities.

13       The government nevertheless proffers, as ipse dixit, that "foreign intelligence activities

14  necessarily touch upon foreign relations."  Stmt. of Int. at 6-7.  But it cites no case that has ever

15  concluded that a mere indirect nexus between national security and foreign relations means that

16  state substantive law is preempted.  Rather, it simply ducks the actual standard:  state law is

17  completely preempted as impermissibly intruding into an area delegated to the federal

18  government by the Constitution if the operation of state law would (1) "significant[ly] conflict"

19  with (2) "uniquely federal interests."  *See Boyle*, 487 U.S. at 504.  In this case, the government

20  does not even *attempt* to demonstrate an actual conflict.[8]

21       As Plaintiffs already have explained, these actions do not fall within the narrow scope of

22  preemption over state laws regulating international relations.  *See* Pl.'s Br. 14-15.  Indeed, the

23  government fails to specify any foreign nation, international policy, or diplomatic issue

24  implicated here.  While foreign intelligence activities might implicate foreign relations were the

25  United States conducting a joint operation with a foreign government or tapping the phones of the

26  embassy of a foreign government, the government does not explain how a suit challenging

---

[8]    To the contrary, elsewhere in its Statement the government acknowledges that state law is harmonized with federal law because it excepts from restriction the turnover of information in response to lawful federal (or state) process.  Stmt. of Int. 11.

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1    *American* telephone companies providing telephone records of *California* customers to the *United*

2    *States* government without consent or court order implicates foreign relations.[9]

3    Thus this case is just the opposite of *American Ins. Ass'n v. Garamendi*, 539 U.S. 396

4    (2003). In *Garamendi*, a California statute requiring insurance companies doing business in

5    California to disclose information about all policies sold in Europe between 1920 and 1945 was

6    held to be in "clear conflict" with federal policy embodied in an Executive Agreement between

7    the President and Germany concerning the resolution of claims against insurance companies by

8    Holocaust survivors. "The express federal policy and the clear conflict raised by the state statute

9    are alone enough to require state law to yield." *Id.* at 425. The government has identified no

10   comparable conflict between the prosecution of Plaintiffs' claims and a federal policy relating to

11   foreign relations. Absent such a clear conflict, the mere existence of federal authority in

12   international relations does not create federal jurisdiction.

13   The same is true with respect to national security and national defense. Where, as here,

14   Congress has legislated in the relevant area, congressional statutes are the principal means to

15   identify federal policy. *See Wallis*, 384 U.S. at 69.[10] In this case, FISA and ECPA are the

16   relevant statutes to identify federal policy in the area of intelligence gathering using phone

17   records. As explained before, those statutes afford room for state privacy legislation with respect

18   to telephone records. *See* Pl.'s Br. 9-16; Pl's Reply 4-11.

19   Finally, the government's attempt to couch the preemptive power of federal supremacy in

20   foreign affairs under the rubric of *Grable* attempts to jam a square peg into a round whole. As

21   _____

22   9    For example, Congress has plenary power over disposition of federal lands, U.S. Const.
     art. IV, § 3, cl. 2, but that does not mean that federal common law displaces state law concerning

23   property disputes over leases between private parties concerning federal land. *See Wallis v. Pan
     American Petroleum Corp.*, 384 U.S. 63, 69 (1966) (refusing to fashion federal common law

24   concerning dispute over federal lands in the absence of "a significant conflict between some
     federal policy or interest and the use of state law in the premises").

25   10   *Cf. Hamdan v. Rumsfeld*, 126 S. Ct. 2749, 2774 n.23 (2006) ("Whether or not the President
     has independent power, absent congressional authorization, to convene military commissions, he

26   may not disregard limitations that Congress has, in proper exercise of its own war powers, placed
     on his powers.") (citing *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 637 (1952)

27   (Jackson, J., concurring)); *see also id.* at 2800 (Kennedy, J. concurring ) ("when the President
     takes measures incompatible with the express or implied will of Congress, his power is at his

28   lowest ebb").

Fenwick & West llp
Attorneys At Law
San Francisco

1    Plaintiffs explained in detail in their Opening Brief (Part I.A) and Reply (Part III.B), the fact that

2    a case may "implicate" an area of law over which the federal government has plenary authority

3    does not satisfy the essential element that must be established to warrant federal jurisdiction

4    under *Grable*.  *See Patrickson v. Dole Foods Co.*, 251 F.3d 795, 803 (9th Cir. 2001), *aff'd* 588

5    U.S. 468 (2003) (federal question jurisdiction does *not* arise in all cases in which foreign relations

6    might arise as an issue).  *See also* Part IV, *infra*.  It simply is a nonsequitor for the government to

7    rely on *Grable* for the proposition that actions relating to foreign intelligence activities

8    necessarily "warrant [] adjudication in a federal forum" (Stmt. Int. at 5) without pointing to any

9    embedded issue of construction of federal law that constitutes an element of Plaintiffs' claims.

10
11
      **B.**     **Neither the National Security Agency Act Nor the Intelligence Reform Act Completely Preempt Plaintiffs' Claims**

12          Likewise, the government's argument that section 6 of the National Security Agency Act

13    of 1959, 50 U.S.C. § 402, and section 102(A)(i)(1) of the Intelligence Reform and Terrorism

14    Prevention Act of 2004, 50 U.S.C. § 403-1(i)(1), completely preempt Plaintiffs' claims is not

15    supported by the language of those statutes or the case law cited.

16          To begin with, this Court has already recognized that "[n]either of these provisions by

17    their terms requires the court to dismiss this action. . . ."  *Hepting v. AT&T Corp.,* No. C-06-672,

18    2006 WL 2038464, *21, 2006 U.S. Dist. LEXIS 49955, *64 (N.D. Cal. Jul. 20, 2006).  Like the

19    state secrets privilege, sections 6 and 102 simply create a *privilege* against disclosure.  *See id.* WL

20    at *21, LEXIS at *64-65; *see also Linder v. DOD*, 133 F.3d 17, 25 (D.C. Cir. 1998); *Linder v.*

21    *NSA*, 94 F.3d 693, 695 (D.C. Cir. 1996); *United States v. Koreh*, 144 F.R.D. 218, 220, 222

22    (D.N.J. 1992).

23          The existence of such a federal privilege—like the *Totten* and state secrets doctrines—

24    does not begin to establish a Congressional intent completely to preempt substantive state law

25    causes of action.  Indeed, the government's Statement of Interest is bereft of the sort of analysis

26    required to establish removal jurisdiction through complete preemption under *Beneficial Nat'l*

27    *Bank v. Anderson*, 539 U.S. 1 (2003), a case the government does not cite.  First, nothing in the

28    plain language of the statutes hints at a Congressional intent completely to preempt a state law

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1    claim.  *See Empire*, 126 S. Ct. at 2135 ("If Congress intends a preemption instruction completely

2    to displace ordinarily applicable state law, and to confer federal jurisdiction thereby, it may be

3    expected to make that atypical intention clear.").  Moreover, the manner in which these statutes

4    typically are applied belies the government's claim that these statutes displace state law causes of

5    action.  The cases cited by the government make that plain.

6        The *Linder* litigation is instructive.  *Linder* involved a state law claim for wrongful death

7    brought in federal court in Florida against individual members of the Contras.  *Linder*, 94 F.3d

8    at 694; *see also Linder v. Portocarrero*, 963 F.2d 332, 333-334 (11th Cir. 1992).  During

9    discovery, plaintiff served a third-party subpoena on the NSA.  The NSA objected, asserting its

10   privilege under section 6, and litigated the issue in the federal courts of the District of Columbia.

11   What the NSA did *not* do was intervene in the Florida action, claiming that the wrongful death

12   action was preempted—completely or otherwise—and ask that the case be dismissed.  *See also*

13   *Heine v. Raus*, 399 F.2d 785 (4th Cir. 1968) (slander suit in which U.S. attended deposition to

14   assert privilege under predecessor of section 102); *Heine v. Raus*, 261 F. Supp. 570, 573-574

15   (D. Md. 1966), *vacated and remanded on other grounds,* 399 F.2d 785 (no preemption claimed).

16       Sections 6 and 102 no more preempt Plaintiffs' claims here than they did the wrongful

17   death claim in *Linder* or the slander claim in *Heine*.  When the time comes, the government will

18   have an opportunity to invoke sections 6 and 102.  Whether or not the invocation of those

19   privileges will be successful remains to be seen as this litigation unfolds.[11]  Those provisions,

20   however, most certainly do not completely preempt state law claims against private actors and

21   therefore do not confer jurisdiction over Plaintiffs' cases.  The government cites no cases saying

22   that they do.

23   **IV.    *GRABLE* DOES NOT PROVIDE A BASIS FOR FEDERAL JURISDICTION IN
          THIS CASE.**

24

25       The government's assertion that federal jurisdiction is proper under *Grable* fails for the

26

27   _____

     [11]    For example, to the extent that the government establishes that the relief sought by Plaintiffs

28   would require the revelation of information protected by sections 6 or 102, the state court can
     tailor its injunction accordingly.

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1   same reasons Verizon's and AT&T's do.  *See* Pl.'s Br. 16-19; Pl.'s Reply 15-18.  The "mere need

2   to apply federal law in a state-law claim" will not "suffice to open the 'arising under' door."

3   *Grable*, 125 S. Ct. at 2367.  That door opens *only* if the federal issue is an essential element of the

4   plaintiff's well-pleaded complaint, the resolution of which turns on a substantially disputed

5   interpretation of federal law.  *Grable*, 125 S. Ct. at 2368-69.

6         The government argues, however, that Plaintiffs' claim under the California Constitution

7   "necessarily requires the resolution of questions of federal law."  Stmt. of Int. 12.  The

8   government is wrong.  While correctly reciting the three elements of this claim (*see Hill v. NCAA*,

9   7 Cal. 4th 1, 39-40 (1994)), the government then wrongfully asserts (without citation of authority)

10  that federal, not state, law governs whether Plaintiffs can establish a legally protected privacy

11  interest and a reasonable expectation of privacy.  Stmt. of Int. 12.  In doing so it ignores *Hill*,

12  California's leading case on the constitutional privacy right.  *Hill* makes clear that a competing

13  interest, such as a search warrant or other lawful process—whether state or federal—is an

14  affirmative defense that does not negate the *existence* of a privacy interest, but instead excuses

15  intrusions upon that interest.  *See Hill*, 7 Cal. 4th at 38 ("Invasion of a privacy interest is not a

16  violation of the state constitutional right to privacy if the invasion is justified by a competing

17  interest."); *see also Baughman v. State of California*, 38 Cal. App. 4th 182, 190 (1995)

18  ("[I]nvestigation of [a] serious crime pursuant to a search warrant *is a defense* which justifies the

19  invasion of [plaintiff's] privacy as a matter of law.") (emphasis added); *Loder v. City of Glendale*,

20  14 Cal. 4th 846, 891-92 (1997) (collecting cases in which constitutionally protected privacy

21  interests were balanced against interests or justifications supporting the alleged invasion of

22  privacy).  Negating an asserted countervailing interest such as a warrant or other lawful process is

23  not a part of Plaintiffs' case.[12]

24

25

26  [12]   Indeed, *Hill* plainly states, in a section entitled "Summary of Elements and Defenses," that

27  "[a] defendant may prevail in a state constitutional privacy case by negating any of the three
    elements . . . or by pleading and proving, *as an affirmative defense*, that the invasion of privacy is
    justified because it substantively furthers one or more countervailing interests."  *Hill*, 7 Cal. 4th at

28  40 (emphasis added).

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1

2

## V.    THE *TOTTEN* DOCTRINE AND THE STATE SECRETS PRIVILEGE PROVIDE NO BASIS FOR FEDERAL JURISDICTION

3

4    Finally, the government relies on the *Totten* doctrine and the state secrets privilege to support its jurisdictional claims.  They do not.

5

### A.    This Court Should Not Decide *Totten's* Applicability Prior to Determining Subject Matter Jurisdiction.

6

7    Plaintiffs have acknowledged that, under certain circumstances, a court may—but

8    certainly is not required to—consider the *Totten* rule as a threshold question prior to addressing

9    subject matter jurisdiction.  *See* Pl.'s Reply 22.  These cases, however, plainly do not present an

10    appropriate circumstance for doing so.  Because this Court may not consider the government's

11    motion to intervene before ruling on Plaintiffs' remand motions (*see* Part II.A, *supra*), to consider

12    *Totten*—a rule of dismissal that may only be asserted by the government—before determining

13    remand puts the cart before the horse.  *See* Pl.'s Br. 20.  This posture is in stark contrast with the

14    circumstances of *Tenet v. Doe*, 544 U.S. 1 (2005), an action filed directly against the United

15    States in which the jurisdictional issue involved *which* federal court should hear the action, rather

16    than a dispute over whether the action should have been brought in federal court in the first

17    instance.  *Id.* at n.4.

18    The interests of comity, reflected in the Supreme Court's discussion in *Int'l Primate*, also

19    argue for addressing the jurisdictional question first.  500 U.S. at 89.  The state court certainly can

20    address *Totten*, guided by this Court's decision in *Hepting*.  *See Tafflin v. Levitt*, 493 U.S. 455,

21    458 (1990) ("Under [our] system of dual sovereignty, we have consistently held that state courts

22    have inherent authority, and are thus presumptively competent, to adjudicate claims arising under

23    the laws of the United States."); *Stone v. Powell*, 428 U.S. 465, 494 n.35 (1976) (rejecting

24    "mistrust of the state courts as fair and competent forums for the adjudication of federal

25    constitutional rights;" "[s]tate courts, like federal courts, have a constitutional obligation . . . to

26    uphold federal law").  Plaintiffs therefore respectfully submit that the most (if not only)

27

28

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1  appropriate course of action is for this Court to determine the jurisdictional question first.[13]

2  **B.    Neither *Totten* Nor the State Secrets Privilege Creates Federal Question**
3  **Jurisdiction Under *Grable* or Under The Complete Preemption Doctrine.**

4          The government concedes that *Grable* requires a showing that federal law provides a

5  "necessary element" of a plaintiff's claim.  Stmt. of Int. 5.  The argument that the state secrets

6  privilege or *Totten* "rule of dismissal" presents a substantial federal issue under *Grable* simply

7  cannot be squared with this requirement.  Neither state secrets nor *Totten* is an affirmative

8  element of either of Plaintiffs' claims.  *See* Pl.'s Br. 21-23; Pl.'s Reply 20-23.  The government

9  has come forward with no arguments (much less any authority) that would change this analysis.

10         Likewise, the government's attempt to show that the state secrets privilege and *Totten*

11  doctrine "completely preempt" *substantive state law* misses the mark.  *See* Pl.'s Br. 14-16; Pl.'s

12  Reply 10-13.  The state secrets *evidentiary* privilege and *Totten* do not supply a substantive rule

13  of decision that could govern the merits of a dispute.  That is why the government does not cite a

14  single authority holding that state secrets or *Totten* confers federal question jurisdiction.  Instead,

15  it reaches for cases with no conceivable application to the jurisdictional issue at hand.

16         For example, unlike the federal common law of contracts that ousted state law in

17  supplying the rule of decision in *New SD, Inc. v. Rockwell Int'l Corp.,* 79 F.3d 953 (9th Cir.

18  1996), neither the state secrets privilege nor *Totten* can supply a substantive federal rule

19  governing disclosure of customer calling records.  Even if Plaintiffs' cases were to proceed in

20  federal court, California state law still would apply to the elements of their claims.  The state

21  secrets privilege would simply govern the admissibility of evidence in adjudicating the claims.

22

---

23  [13]    As discussed in Plaintiffs' Reply Brief, if this Court were to proceed with the *Totten* question
24  first, it could simply apply its own precedent from *Hepting*, holding that *Totten* does not apply.
*See* Pl.'s Reply 22-23; *see also Terkel v. AT&T Corp.*, No. 06 CV 02837, 2006 WL 2088202, at
25  *7-8, 2006 U.S. Dist. LEXIS 50812, at *22-27 (N.D. Ill. Jul. 25, 2006).  That ruling is equally
applicable here.  Indeed, contrary to the government's contention, not only are Plaintiffs not
26  claiming to be parties to an espionage agreement, Plaintiffs have not even asserted that
Defendants are parties to such an agreement (or for that matter, *any* formal agreement) with the
NSA.  *Compare* Stmt. of Int. 10.  Plaintiffs' Complaints allege only that AT&T and Verizon have
27  been providing calling records to the NSA on a voluntary, ongoing basis, under neither judicial
nor contractual compulsion.  *See* Campbell Complaint at ¶ 19; Riordan Complaint at ¶ 14.  That is
28  all.

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1    Similarly, *Totten*, like other justiciability doctrines such as abstention or the political question

2    doctrine, would be argued defensively only as a ground for dismissal.

3         Similarly, *Oneida Indian Nation v. County of Oneida*, 414 U.S. 661 (1974), does not

4    support the government's position.  The Oneidas filed suit in district court alleging a right to

5    possession of lands based on rights conferred and protected by treaties with the United States,

6    later implemented by federal statute.  *Id.* at 664.  The Supreme Court thus reversed a dismissal for

7    lack of federal question jurisdiction, holding:

8         [T]he complaint in this case asserts a present right to possession under federal law.
         The claim may fail at a later stage for a variety of reasons; but for jurisdictional
9         purposes, *this is not a case where* the underlying right or obligation arises only
         under state law and *federal law is merely alleged as a barrier to its effectuation….*
10

11   *Id.* at 675 (emphasis added).  Thus, federal jurisdiction was proper because "the right to

12   possession itself is claimed to arise under federal law in the first instance."  *Id.* at 676.

13        Implicit in *Oneida*'s formulation is the rejection of the government's position here.[14]  The

14   state secrets privilege and *Totten* are, at most, potentially "a barrier to [the] effectuation" of

15   Plaintiffs' state-law claims.  *Id.* at 675.  Plaintiffs' claims are not preempted.

16                                **CONCLUSION**

17        For the foregoing reasons, Plaintiffs' motions for remand should be granted.

18   Dated: August 16, 2006                    Respectfully,

19                                             FENWICK & WEST LLP
20

21
                                             By:        /s/ Laurence F. Pulgram
22                                                        Laurence F. Pulgram

23                                             *Attorneys for Plaintiffs*

24

25

26   _____
     [14]   *United States v. Pink*, 315 U.S. 203 (1942) is likewise inapposite.  The *Pink* Court explicitly
27   concluded that New York State policy impermissibly conflicted with federal policy recognizing
     the Russian government.  *Id.* at 231-234.  Plaintiffs' claims here do not implicate, let alone
28   conflict with, the government's exercise of control over relations with foreign nations (Pl.'s Br.
     15 & n.7) and the government has made no showing to the contrary.

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1
2

AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF NORTHERN CALIFORNIA
Ann Brick, Nicole A. Ozer

3
4

AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF SOUTHERN CALIFORNIA
Peter Eliasberg, Clare Pastore

5
6
7

AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF SAN DIEGO/IMPERIAL
COUNTIES
David Blair-Loy

8
9
10

FENWICK & WEST LLP
Laurence F. Pulgram, Mitchell Zimmerman,
Jennifer L. Kelly, Saina Shamilov,
Candace Morey

11

12

B9320/00401/LIT/1253840.8

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO